| | |
|---|---|
| **RESTRICTED SPENDING** ) | |
| **SOLUTIONS, LLC,** ) | |
| ) | |
| *Plaintiff,* ) | **Case No: 08-93-MJR** |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **APPLE, INC.,** ) | |
| ) | |
| *Defendant.* ) | |
| _____ ) | |

**PLAINTIFF RESTRICTED SPENDING SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT APPLE, INC.'S MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................ i

TABLE OF AUTHORITIES .................................................................. ii

I.      INTRODUCTION ...................................................................... 1

II.     BACKGROUND ......................................................................... 3

        A. iTunes, the Allowance Feature and the Patent-in-Suit ............ 3

        B. Procedural Background  ......................................................... 4

III.    ARGUMENT............................................................................... 6

        A. Apple Fails to Show That the Private Interest Factors ........... 8
           Weigh Strongly in its Favor

               1.   Illinois Is Plaintiff's Choice of Forum  ..................... 8
                    and Material Events Occurred in California and Illinois

               2.   There Is Relative Ease of Access to Sources  ............. 11
                    Of Proof Regardless of the Location of the Trial

               3.   The Northern District of California Is Not an ............. 13
                    Overwhelmingly Convenient Forum for the Parties

               4.   The Northern District of California is Not an ............. 14
                    Overwhelmingly Convenient Forum for the Witnesses

        B.  Public Interest Does Not Warrant a Transfer of Venue  ........ 16

        C.  Prospective Jurors in the Northern District of California ...... 17
            Have Such Fixed Opinions They Are Unable to Judge Impartially

        D. In the Alternative, if a Transfer is Necessary, This Case Should ........... 20
           Be Transferred to Central District of California

IV.     CONCLUSION  ......................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                           **Pages**

*Amoco Oil Co. v. Mobil Oil Corp.*, ……….................................................   7
90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)

*Apple Computer, Inc. v. Unova, Inc.*,.......................................................................5, 11, 15
No. Civ.A. 03-101-JJF, 2003 WL 22928034, *3 (D. Del., Nov. 25, 2003)

*Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*,    13
212 F.3d 1031, 1037 (7th Cir. 2000)

*Burger King Corp. v. Rudzewicz*, ...............................................................   9
 41 U.S. 462, 475 (1985)

*Coffey v. Van Dorn Iron Works*, ...............................................................   7
796 F.2d 217, 220 (7th Cir. 1986)

*Coleman v. Kemp*, ...................................................................................   8
778 F.2d 1487, 1489 (11th Cir. 1985)

*Coolsavings.com, Inc. v. IQ.Commerce Corp.*, ............................................. 9, 10, 12, 16
53 F. Supp. 2d 1000, 1003 (N.D. Ill. 1999)

*DeFrancesco v. First Horizon Home Loan Corp.*, ...................................   5, 13
Slip Copy, No. 06-0058-DRH, 2006 WL 3196838, *1 (S.D. Ill., Nov. 3, 2006)

*Electroplated Metal Solutions, Inc. v. American Services, Inc.*, ............................   7
500 F. Supp. 2d 974, 978 (N.D.Ill., 2007)

*Hall v. The Holmes Group, Inc.*, ...............................................................   7
No. 4:05CV2052 HEA, 2006 WL 148742, *2 (E.D. Mo. Jan. 18, 2006)

*Haworth, Inc. v. Herman Miller, Inc.*,.......................................................   19
821 F. Supp. 1476, 1480 (N.D. Ga. 1992)

*LFG, LLC v. Zapata Corp.*, ….......................................................…………….….8, 16, 17
78 F. Supp. 2d 731, 739 (N.D. Ill. 1999)

*Patton v. Yount*, ...................................................................................   8, 18
467 U.S. 1025, 1035 (1984)

*Sitrick v. Freehand Systems, Inc.*, ...........................................................   12
No. 02 C 1568, 2003 WL 1581741, *3 (N.D. Ill. March 27, 2003)

*Stock v. Integrated Health Plan, Inc.,* ......................................................... 12
Slip Copy, No. 06-CV-00215-DRH, 2006 WL 3420289 at *3 (N.D. Ill. 2006)

*Symons Corp. v. Southern Forming and Supply, Inc.,* ................................................. 7
954 F. Supp. 184, 187 (N.D. Ill. 1997)

*United States v. Anguilo,* …..........................................………………………… 8, 18
897 F.2d 1169, 1181 (1st Cir. 1990)

*United States v. Lehder-Rivas,* …..........................................………………… 19
955 F.2d 1510, 1524 (11th Cir. 1992)

*Vandeveld v. Christoph,* .......................................................... 8, 9, 13, 14, 15, 17
877 F. Supp. 1160, 1167 (N.D. Ill. 1995)

*VE Holding Corp. v. Johnson Gas Appliance Co.,* ................................................. 6
917 F.2d 1574, 1584 (Fed .Cir. 1990)

*Withrow v. Larkin,* …..........................................……………………... 8, 19
421 U.S. 35, 47 (1975)

*World-Wide Volkswagen Corp. v. Woodson,* ................................................. 12
444 U.S. 286, 294 (1980)

## Statutes

35 U.S.C. § 271 .......................................................... 6

28 U.S.C. § 1391(c) .......................................................... 6

28 U.S.C. § 1404(a) .......................................................... 2, 4, 7

28 U.S.C. § 1400(b) .......................................................... 2, 6, 8, 10

# INTRODUCTION

Plaintiff Restricted Spending Solutions ("RSS") hereby submits this Opposition to Defendant Apple, Inc.'s ("Apple") Motion to Transfer Venue. Apple seeks transfer of this patent infringement case to the Northern District of California, San Jose Division. As movant, Apple bears the burden of proving that the Northern District of California is a substantially more convenient forum than where the case is now properly situated.

Apple admits that jurisdiction is proper in this district. *See* Docket No. 15 ¶¶ 2-3. Venue is also proper in this district. *See* Docket No. 3, ¶ 6. Thus, Apple must show that the Northern District of California is clearly more convenient. Apple is unable to meet this burden in that: 1) Apple is one of the oldest and largest computer companies in the world and admittedly would feel little to no inconvenience litigating in this district (or for that matter any district) where its products are sold; 2) RSS's representatives, located in Southern California, will have to travel regardless of the venue; 3) key non-party witnesses, the inventor of the patent-in-suit and the patent attorney who prosecuted the patent, are located in New Jersey and travel to California would severely inconvenience them; and 4) numerous relevant documents such as prosecution histories, conception and development materials as well as damages information are located on the East Coast and must be sent regardless of venue. Thus, not only is the Northern District of California no more convenient than the Southern District of Illinois, but California is not a substantially more convenient forum than Illinois.

Apple must also show that the interests of justice weigh strongly in favor of the Northern District of California as the more convenient forum. Apple fails to do so. The time period for resolution of cases in both districts is comparable and thus does not

1

strongly weigh in favor of the Northern District of California. Further, acts of infringement in the way of sales took place in both California and Illinois and therefore do not favor California over Illinois. In fact, the large degree of infringing product sold and used in this district, including the large number of contracts which Apple enters with iTunes customers in this district to allow customers in this district to use iTunes, show the interests of justice weigh in favor of this district. Illinois has an interest in litigating the case in its own forum. Further, the Southern District of Illinois contains a more neutral jury pool than the Northern District of California (as the Northern District of California contains several thousand Apple employees, family and friends of Apple employees, a large customer base, a support industry that has grown around Apple, etc.). Thus, transferring this action to the Northern District of California would present additional hurdles to RSS which are not present should the case proceed here.

This case is properly filed according to the venue statute that specifically applies to patent infringement cases, 28 U.S.C. § 1400(b). While this may be only one of many jurisdictions in which the case could properly be filed and there is nothing uniquely convenient about the Southern District of Illinois to this case, there is nothing especially inconvenient either—especially for a company as large as Apple. Apple also receives numerous benefits from offering to sell and selling infringing product in this district. Also, the Southern District of Illinois is RSS's choice of forum, and the availability of multiple appropriate forums in such cases is due to: 1) Congress' decision in enacting the patent venue law, and to 2) Apple's nationwide marketing of the product at issue. In the context of 28 U.S.C. § 1404(a), movant must show its proffered forum is not only uniquely, but also substantially more convenient—which Apple is unable to do.

In the alternative, should this Court believe a transfer is necessary, RSS requests that the Court transfer this action to the Central District of California due to its contacts with the parties and potentially more neutral jury pool.

## BACKGROUND

**A.    iTunes, the Allowance Feature and the Patent-in-Suit.**

Before delving into the instant motion, a brief explanation of the infringing product is necessary. iTunes is the number one music retailer in the US. As of 2008, over 4 billion songs have been downloaded by 50 million customers since the service first launched on April 28, 2003.[1] In order to utilize iTunes, a user must enter into a sales agreement and a service agreement.[2] Thus, Apple enters into a contract with each user prior to allowing each user to utilize the iTunes service. As Apple's answer and brief indicate, there are users in the Southern District of Illinois who utilize the iTunes sales and service. *See* Docket No. 16 at 3, 5-6. While Apple does not provide specific numbers, the number of contracts it has with users from the Southern District of Illinois to utilize the iTunes website is envisioned to be a rather large number.

The product at issue in this action is the Allowance feature of iTunes. Apple launched the Allowance feature on October 16, 2003, and it very quickly accounted for a large number of sales for Apple.[3] The iTunes' Allowance feature allows adults to set spending limits (e.g., monthly) for children purchasing music. As children's spending habits cannot always be monitored, the Allowance feature allows adults to set periodic pre-set spending limits for children. In this manner, the Allowance feature allows adults

---

[1] Exhibit A, http://www.apple.com/pr/library/2008/04/03itunes.html
[2] Group Exhibit B, http://www.apple.com/legal/itunes/us/sales.html;
http://www.apple.com/legal/itunes/us/service.html
[3] Apple earned $1 million in sales in just two months (from Oct. 16, 2003 until Dec. 16, 2003) for the Allowance feature and gift card sales. Exhibit C, http://www.apple.com/pr/library/2003/dec/15itunes.html.

the security of knowing that children's spending habits are controlled.  *See* Docket No. 3,

Ex. B.  Without the use of the Allowance feature, these sales may not happen as the

adults would not give children funds to purchase music without supervision.

Unfortunately for Apple, the Allowance feature falls within the scope of the

patent-at-issue.

**B.**    **Procedural Background.**

After RSS brought the instant action, Apple filed a Motion to Transfer Venue to

the Northern District of California, San Jose Division, pursuant to 28 U.S.C. § 1404(a).

While 1404(a) provides for the transfer of an action from one federal district to another

based on the convenience of the parties and witnesses and in the interest of justice,

Apple's arguments only highlight *Apple's* location, *Apple's* employee-witnesses, *Apple's*

burden of travel costs and expenses, and *Apple's* documents in California. (emphasis

added).  Apple's brief seems to suggest that although Apple is one of the oldest and

largest computer companies in the world with products sold worldwide (including the

products at issue here), the only place this action could be brought is in its own backyard.

However, what Apple fails to emphasize is that Apple, Inc. is a multi-billion dollar

company[4] which offers for sale and sells products and software in every judicial district

the United States, including the Southern District of Illinois.[5]

In fact, because of its size, Apple was able to successfully maintain venue outside

of California in another patent infringement action, even though both parties held their

principal places of business in California, witnesses were mostly, if not all, located

---

[4] Apple generated over $24 billion in revenue and $3.5 billion in net income in the fiscal year 2007.  *See* Exhibit D, article entitled "Apple Reports Fourth Quarter Results" found at http://www.apple.com/pr/library/2007/10/22results.html
[5] Apple concedes, in another context, that the accused software is available in Illinois as it is in every other judicial district.  *See* Docket No. 16 at 3.

outside the forum venue of Delaware, and no documents on the design, manufacture, use or sale of the accused products were located in or near Delaware. *See Apple Computer, Inc. v. Unova, Inc.*, No. Civ.A. 03-101-JJF, 2003 WL 22928034, *3 (D. Del., Nov. 25, 2003). In *Apple Computer, Inc. v. Unova, Inc.*, Apple asserted arguments such as: no location would be ideal for the convenience of witnesses who are dispersed throughout the United States; parties are large corporations with substantial resources who will not be substantially burdened by travel to Delaware; Delaware's expertise and experience in patent law point to keeping the case there; and Apple, as plaintiff, is entitled to deference on its choice of an appropriate forum. *Id.* These arguments are especially telling considering the contradictory arguments Apple makes in the instant case.[6]

Further, Apple as one of the oldest and largest computer companies, is not inconvenienced by the instant action. Apple employs thousands of employees nationwide,[7] brings in billions of dollars in profits annually,[8] and markets its products nationwide. Apple should feel little to no burden/impact of litigating a case properly situated in the Southern District of Illinois. *See DeFrancesco v. First Horizon Home Loan Corp.*, Slip Copy, No. 06-0058-DRH, 2006 WL 3196838, *1 (S.D. Ill., Nov. 3, 2006)(Court kept action in Illinois based, in part, on fact that defendant was national in scope and would have had little difficulty litigating there or anywhere). In fact, due to Apple's size and success, it is difficult to see how a patent infringement suit involving one feature of one product could inconvenience Apple at all especially when the suit was brought in a district from which Apple receives sales from the product at issue (iTunes).

---

[6] RSS recognizes that not all facts between the instant case and *Apple Computer, Inc. v. Unova, Inc.* are similar.

[7] *See* Exhibit E, excerpts from Apple, Inc.'s Form 10-K filed with the Securities and Exchange Commission as of September 29, 2007.

[8] *See* fn. 4, *supra.*

Apple's arguments should be taken for what they are—an attempt to have this action moved into its own backyard. Apple is currently not inconvenienced by this forum; however, it would not mind having this action proceed in a forum that is most convenient forum for it. While the Northern District of California may be more convenient for Apple, Apple has not demonstrated that the private and public interest factors make it substantially more convenient than the Southern District of Illinois, thus its Motion to Transfer should be denied, as explained more fully below.

## ARGUMENT

Patent infringement actions are unique in that they have their own venue statute. Pursuant to 28 U.S.C. § 1400(b), venue in civil actions for patent infringement may be brought "where the defendant has committed acts of infringement and has a regular and established place of business." Case law holds that for a corporate defendant in a patent infringement case, the test for venue becomes whether the defendant "was subject to personal jurisdiction in the district of suit at the time the action was commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1581 (Fed .Cir. 1990) (citing 28 U.S.C. §§ 1391(c) and 1400(b)). Part of the reasoning behind this is that patent infringement is a tort which occurs wherever infringing products are offered for sale or sold. Because infringers are committing a tort in every jurisdiction where products are offered for sale or sold,[9] so long as personal jurisdiction is proper, so is venue.

RSS acknowledges that based on the same statute, other districts may also be proper venues, including the Northern District of California. While 28 U.S.C. § 1404(a) permits courts to transfer cases to a more convenient forum, courts must consider the

---

[9] Under 35 U.S.C. § 271, both sales and offers for sale (among other things) are infringing acts.

following factors in making such a determination: 1) the plaintiff's choice of forum; 2) the locations of the material events; 3) the relative ease of access to sources of proof; 4) the convenience of the parties; and 5) the convenience of the witnesses. *See Electroplated Metal Solutions, Inc. v. American Services, Inc.*, 500 F. Supp. 2d 974, 978 (N.D.Ill., 2007) (citing *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)). "It is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, a plaintiff's choice of forum should not be disturbed." *Hall v. The Holmes Group, Inc.*, No. 4:05CV2052 HEA, 2006 WL 148742, *1 (E.D. Mo. Jan. 18, 2006).

An examination of the "interests of justice" is determinative even if Apple were able to demonstrate that the convenience of the parties and witnesses might call for a transfer of venue. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). "Public interest factors that may warrant transfer include: 1) the court's familiarity with applicable law; 2) desirability of resolving controversies in their locale; 3) the relation of the community to the occurrence at issue; 4) the congestion of the respective court dockets and prospects for an earlier trial." *Symons Corp. v. Southern Forming and Supply, Inc.*, 954 F. Supp. 184, 187 (N.D. Ill. 1997).

In balancing the interests in this case, Apple did not demonstrate that the Northern District of California is a significantly more convenient forum than plaintiff's choice of forum in the Southern District of Illinois. In fact, plaintiff contends that were the court to determine that the Northern District of California were a significantly more convenient forum, the proposed transfer would raise a question of fundamental fairness. A party is

entitled to a "constitutional standard of fairness requir[ing] that a party have 'a panel of impartial, 'indifferent' jurors.'" *Coleman v. Kemp*, 778 F.2d 1487, 1489 (11th Cir. 1985). The analysis of this fundamental fairness question involving jury bias is based on the presumed prejudice standard. *United States v. Anguilo*, 897 F.2d 1169, 1181 (1st Cir. 1990). In determining the presence of potential jury bias through presumed prejudice, the question is whether the prospective jurors have such fixed opinions that they are unable to judge impartially and resolve the dispute between the parties. *Patton v. Yount*, 467 U.S. 1025, 1035 (1984). The court must also consider the potential of actual bias to the potential juror pool because of the potential jurors having a pecuniary or economic interest in the suit. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

A.      **Apple Fails to Show That the Private Interest Factors Weigh Strongly in its Favor.**

   1. **Illinois is Plaintiff's Choice of Forum and Material Events Occurred in California and Illinois.**

Apple contends that the Northern District of California has a much greater connection with the operative facts giving rise to the alleged infringement by Apple than the Southern District of Illinois. It furthers that because Apple's principal place of business is in the Northern District of California, this factor favors transfer. However, significant infringing activities took place in Illinois, RSS is organized in Illinois, and, according to the venue statute, 28 U.S.C. § 1400(b), this makes the Southern District of Illinois, plaintiff's choice of forum, a proper venue. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) ("A plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor").[10] The fact that

---

[10] In its Motion to Transfer Venue, Apple mentions a bill passed by the House of Representatives which, if made into law, could potentially alter the venue requirements in patent infringement suits. *See* Docket No.

there may be increased sales in the Northern District of California (although figures are unavailable at this point) as opposed to the Southern District of Illinois neither counteracts the language of the venue statute nor proves that the Northern District of California is a more convenient forum.

Apple's Motion to Transfer Venue argues that a plaintiff's choice of forum should be afforded "less deference" because "the design, creation, and implementation of the accused allowance feature occurred almost entirely in California." *See* Docket No. 16 at 11-12. However, "'[e]ven a single act can support jurisdiction' if it creates a 'substantial connection' with the forum, and not merely an 'attenuated affiliation' so long as it is directly related to a plaintiff's claim." *Coolsavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1003 (N.D. Ill. 1999) (quoting *Burger King Corp. v. Rudzewicz,* 41 U.S. 462, 475 (1985)) (IQ intended its interactive web site to be accessible by residents of all states, a number of Illinois residents did become ISave members, these contacts amounted to only one-half of one percent of the total site activity, but it is enough that IQ's couponing program, targeted at residents of all states, was accessed by people in Illinois). *Coolsavings.com* is applicable here as Apple has numerous sales of the product at issue (iTunes) in this district, and in order for users from this district to utilize iTunes, those users must first enter into contracts with Apple. Thus, it is more unfair to allow a corporation as large as Apple to introduce its product to the entire country while remaining subject to personal jurisdiction only in its home district than it is to subject that

---

16 at 10. This bill has not been made into law, is heatedly contested and is stalled in the Senate, likely indefinitely. Exhibit F, http://www.businessweek.com/ap/financialnews/D8VVUFV80.htm ("A bill to reform U.S. patent law, which split the business community and sparked a fierce lobbying battle, hit a roadblock late Thursday in the Senate and may not move forward this year."). This bill is not law and has no bearing on the suit at hand.

same corporation to personal jurisdiction almost anywhere in the country to which it introduces its product or program. *Id.*

Apple cites to *Gary Friedrich Enterprises, LLC v. Marvel* in its attempt to demonstrate that distribution and merchandising of an allegedly infringing product does not constitute "critical infringement" and therefore does not form the basis for a substantial connection to a forum. *See* Docket No. 16 at 11. The events in *Gary Friedrich* are distinguishable. The activities by Apple in this forum are infringing activities related to plaintiff's claim. For example, the iTunes website which utilizes the Allowance feature is a highly interactive website, which, as the number one music retailer in the United States, is frequented by many users from the Southern District of Illinois.[11] Prior to using iTunes (and the Allowance feature of iTunes), users must enter into contracts with Apple—both a sales agreement and a service agreement.[12] Thus, Apple has numerous contracts with residents of the Southern District of Illinois concerning the product at issue. Much like in *Coolsavings.com*, residents of Illinois are targeted with the iTunes product and service, are provided easy access to this product and service, experience the highly interactive website and the iTunes product and service, and enter into license agreements regarding this product and service. The sale of a DVD, the allegedly infringing product in *Friedrich*, by nature simply cannot create the same level of "substantial connection" with a forum as the use of Apple's interactive websites and/or the sales of their products.

The venue statute, 28 U.S.C. § 1400(b), places much significance on these sales as they equate to acts of infringement and establish a strong connection to the Southern

---

[11] *See*, fn 1, *supra.*
[12] *See*, fn 2, *supra.*

District of Illinois. As shown above, Apple has pervasive contacts with the Southern District of Illinois through its highly interactive iTunes website and Apple's customer website. Numerous residents from the Southern District of Illinois purchase Apple products from iTunes, from Apple's website (such as iPods to utilize with their music purchases from iTunes) and/or enter into license agreements with Apple to use iTunes. While RSS acknowledges that the venue statute may allow other districts to have proper venue as well, it is Apple's duty as the movant on this issue to strongly prove that the Northern District of California is a more convenient forum than the Southern District of Illinois. Apple has not done so. The fact that Apple happens to be headquartered in the Northern District of California, and that some of its witnesses just happen to be employed at Apple's headquarters should not insulate Apple from patent infringement allegations in jurisdictions outside of the Northern District of California. This protection from patent infringement allegations would come despite the fact that Apple has billions of dollars of sales from its infringing products nationwide (and despite the fact that Apple admits in *Apple Computer v. Unova*, 2003 WL 22928034 at \*3 that, as a large company, it would not be inconvenienced in other districts where infringement occurs).

Infringing activities in the way of sales took place in Illinois. Apple's argument concerning the situs of infringing activities in California does not support California as a more convenient forum. Apple has not met its burden concerning this factor.

### 2. There Is Relative Ease of Access to Sources of Proof Regardless of the Location of the Trial.

Apple maintains that simply because many of its documents concerning the design, operation and marketing of the accused product are found in California, that this factor weighs in favor of transfer to the Northern District of California. First and foremost, with

today's advanced technology, sources of proof are easily accessible via computers, e-mail, and the Internet, and thus, the actual physical location of materials becomes a non-issue. *See Stock v. Integrated Health Plan, Inc.*, Slip Copy, No. 06-CV-00215-DRH, 2006 WL 3420289 at *3 (N.D. Ill. 2006).

(Court agreed that the "presence of documents in Florida is not a persuasive factor in these modern days of photocopying, faxing and other electronic means of retrieval" and therefore did not find that this factor weighed in favor of transfer); *see also Sitrick v. Freehand Systems, Inc.*, No. 02 C 1568, 2003 WL 1581741, *3 (N.D. Ill. March 27, 2003) quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)("Progress in communications and transportation has made defense of a lawsuit in a foreign tribunal less burdensome").

Apple is a computer company with vast knowledge of technology and software. It is very likely that a majority of Apple's relevant materials are stored in electronic format already and may be easily sent via electronic means thereby imposing little burden on Apple. Thus, the fact that materials are readily accessible and easily transferable does not weigh heavily in favor of either location. *Coolsavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999).

The RSS non-party witnesses will have significant materials for discovery such as prosecution histories, U.S. Patent and Trademark information, damages materials, licensing agreements and correspondence, and development and marketing information. These materials are presumably located in Southern California, New Jersey, or Pennsylvania and must be sent via electronic means or otherwise when deemed

discoverable, such that again, the Northern District of California is no more convenient for the location of evidence than the Southern District of Illinois.

Due to the technological versatility of Apple, the presence of some materials in California – with many other documents found outside of California – does not weigh in favor of transfer and Apple has not proved otherwise.

### 3. The Northern District of California Is Not an Overwhelmingly Convenient Forum for the Parties.

Apple argues that because both parties reside in California (though still hundreds of miles apart) the Northern District of California would be more convenient. Yet, "a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld*, 877 F. Supp. at 1167. RSS is located in Southern California and its representatives must still travel by plane to Northern California or Southern Illinois, regardless of the length of the flight. As one party or the other must travel in this case, Apple has not provided clear evidence that the Northern District of California is an overwhelmingly convenient forum for the parties. The plaintiff's choice of forum is most determinative, not defendant's, and for RSS, here is the favored choice.

As "easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy...for cases to be litigated...in...major metropolitan areas," Apple fails to prove why the Northern District of California is any more convenient. *See Defrancesco*, 2006 WL 3196838 at *2 citing *Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)(court found that convenience of parties factor weighed in favor of Southern District of Illinois in that defendant was national in scope). The Southern District of Illinois is located near the large metropolitan area of St. Louis,

Missouri, making airplane flights, lodging, and other necessities just as accessible as the Northern District of California and Apple has not offered information otherwise.

### 4. The Northern District of California is Not an Overwhelmingly Convenient Forum for the Witnesses.

Apple contends that because the bulk of its witnesses and documents are located in California, the Northern District of California is a more convenient venue. However, Apple does not consider that the majority of RSS's witnesses are located outside of the Northern District California. RSS is headquartered in southern California, meaning that party witnesses must still negotiate airline travel to reach the Northern District of California. In addition, there are at least two potential non-party witnesses located on the East Coast, three thousand miles from the Northern District of California. The location of these witnesses deflates Apple's contention that California is the most convenient forum (in fact, the central location of the Southern District of Illinois is more preferable to such witnesses).[13]

Two key non-party witnesses for RSS are located in New Jersey, which is significantly closer to Illinois than California. Apple fails to recognize in its motion that Michael Picciallo and Peter Butch, the inventors of the '064 patent at issue, both reside in New Jersey. Mr. Picciallo and Mr. Butch will likely be called as key non-party witnesses for RSS, testifying on such significant issues as the conception of the subject matter and reduction to practice of the invention in the '064 patent; the prosecution of the '064 patent; infringement by Apple; validity, enforceability, and non-obviousness of the '064

---

[13] The sheer number of Apple's witnesses in California is not a determinative factor for courts when considering whether a particular venue is more convenient to the witnesses. *See Vandeveld*, 877 F. Supp. at 1168 ("A court should not limit its investigation to a review of which party can produce the longer witness list"). Rather, courts have found that it is more appropriate and beneficial to "look to the nature and quality of the witnesses' testimony with respect to the issues in the case." *Id.* This is especially true here where Apple, as a billion dollar company, is in the best position (i.e., not inconvenienced) to provide for travel for its employee witnesses.

patent; and damages. Mr. Butch's testimony will also likely be necessary considering his role as the patent attorney who prosecuted the '064 patent with the United States Patent and Trademark Office. Thus, while arguably some of Apple's key employee witnesses are located in California, RSS expects to bring a number of key witnesses who are either not located in California, or at least are not located in the Northern District of California.

Apple insists that it would be "burdened because it would have to pay for [their] witnesses' airfare, hotel, and meals" and that "productivity at Apple would suffer." *See* Docket No. 16 at 13. However, Apple's position is a bit exaggerated. Certainly, it is likely that Apple will incur some additional expenses for travel to Illinois if its motion to transfer is denied. Yet, as the relevant witnesses and sources of proof appear to be scattered throughout several jurisdictions, it is inevitable that someone must incur travel costs regardless of where the case is litigated. Case law makes clear that, "transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party." *Vandeveld*, 877 F. Supp. at 1167.

In addition, Apple has admitted that it is not strongly inconvenienced by litigating outside of the Northern District of California. *See Apple Computer v. Unova*, 2003 WL 22928034 at *3. In that case, Apple asserted that there was insufficient reason to move the case from Delaware as the Defendants were large corporations with substantial resources who would not be substantially burdened by travel to Delaware. *Id.* Apple should be bound by such admissions.

Considering the location of witnesses in various jurisdictions and that Apple cannot show that the costs of travel incurred by the parties and non-parties as a group

would be significantly reduced by transferring the case, Apple does not meet its burden of proof that California is a more convenient venue.

**B.      Public Interest Does Not Warrant a Transfer of Venue.**

Without a doubt, the Southern District of Illinois is competent to hear and decide a question of patent infringement, and thus transfer to the Northern District of California is not favored on this basis. *Coolsavings.com*, 53 F. Supp. 2d 1000, 1006 (two district courts are equally competent to hear and decide questions of federal law.).

The Southern District of Illinois has a desire to resolve controversies in their locale and the community has a strong relation to the occurrence at issue. Apple asserts that based on Apple's activities and location in the Northern District of California, this case should be litigated there. Yet, Apple's products, including the accused product, are offered for sale and sold in the Southern District of Illinois. *See* Docket No. 16 at 3, 5-6. The use of the iTunes product by customers in this district necessitates that the customer resident enter into a sales agreement and service agreement with Apple.[14]  In addition, Apple has a number of authorized resellers of all Apple products in the Southern District of Illinois.[15]  With the prevalence of Apple products in the Southern District of Illinois, the likelihood that numerous Illinois citizens purchase and use those products increases greatly. The citizens of the Southern District of Illinois therefore have a heightened interest in cases involving Apple's products and accused acts of infringement which occur in their district.

Illinois also has a strong interest in adjudicating disputes that involve infringement of an Illinois limited liability company's intellectual property. *LFG, LLC v.*

---

[14] *See*, fn 2, *supra*.
[15] *See* Exhibit G for list of authorized resellers within zip code 62201 found on the Apple website.

*Zapata Corp.,* 78 F. Supp. 2d 731, 739 (N.D. Ill. 1999). RSS is an Illinois limited liability company and Apple has significant sales of infringing product in this jurisdiction. Thus, Illinois' stake in the outcome of the case is substantial resulting in this factor weighing heavily in denial of transfer.

Also, there is no congestion of the respective court dockets or prospects for an earlier trial warranting change of venue. Apple cites to statistics demonstrating that all types of civil cases in the Southern District of Illinois "will likely be resolved just as quickly and efficiently in the Northern District of California." *See* Docket No. 16 at 15. First, Apple's argument ignores that the trial date set in this action is quicker (by a year) than the median trial date from the Northern District of California, which cuts against Apple's own argument. Second, there must be a clear showing of factors that weigh in favor of the transfer, and not simply that make each venue equivalent. *See Vandeveld,* 877 F.Supp. at 1167. Even if credence were given to Apple's argument, comparable resolution times make the two districts even for interests of justice, and thus there is no strong convenience factor weighing in favor of the Northern District of California as Apple is required to prove for transfer.

> **C.**      **Prospective Jurors in the Northern District of California Have Such Fixed Opinions They Are Unable to Judge Impartially.**

Even if Apple was able to show that the balance of interests is so strongly in favor of the proposed transfer to the Northern District of California, it would be more difficult to obtain an impartial jury in the Northern District of California than in the Southern District of Illinois. By Apple's own admission, the corporation has "very strong connections to California" and that "California has a strong interest in this litigation." *See* Docket No. 16 at 17. The Northern District of California, San Jose Division, is

located less than eleven miles from Apple's Cupertino, California headquarters. This is
critically important, and unique to this case, because Apple followers, not necessarily
even Apple employees or Apple investors, have been described as "no bigger tribe, and
none more zealous…infamous for their sensitivity to slams, real or imagined, against the
beloved company."[16]  In fact, Apple's customers have been described quite often as
"fanatical."[17]   While RSS certainly realizes that there are Apple fans all over the world,
there is no doubt that there is a much greater concentration in the Northern District of
California.

In accordance with a constitutional standard of fairness, a party is entitled to "a
panel of impartial, indifferent jurors." The analysis of this fundamental fairness question
involving jury bias is based on the presumed prejudice standard. *United States v.
Anguilo*, 897 F.2d 1169, 1181 (1st Cir. 1990). The specific question is whether the
prospective jurors have such fixed opinions that they are unable to judge impartially and
resolve the dispute between the parties. *Patton v Yount*, 467 U.S. 1025, 1035 (1984).
There must be pretrial publicity that is sufficiently "prejudicial and inflammatory" to

---

[16] Exhibit H, "Why Apple Fans Hate Tech Reporters"
http://machinist.salon.com/feature/2008/03/18/true_enough_excerpt_2/, excerpted from *True Enough*,
Farhad Manjoo (Wiley, 2008).
[17] Exhibit I contains just some examples of articles reporting on the "fanatical" nature of Apple customers.
*See, e.g.,* http://www.sfgate.com/cgi-bin/article.cgi?file=/c/a/2006/03/26/APPLECULTURE.TMP  (Article
entitled, "Faithful, sometimes fanatical, Apple customers continue to push the boundaries of loyalty");
http://www.insidecrm.com/features/strategies-apple-loyal-customers/ ("it's obvious that Apple Inc. is a
company that enjoys fanatical brand loyalty");   http://www.wired.com/gadgets/mac/news/2003/04/58568.
Upcoming documentary, "MacHeads The Movie", explores the cult of Apple fanatics.
http://laughingsquid.com/macheads-the-movie-a-documentary-about-apple-fanatics/, relevant pages
included; http://www.macnn.com/articles/06/07/11/apple.google.find.loyalty/  ("Apple, whose score far
outranks its closest competitor, is well known for its passionate and dedicated customer base"). Articles
even refer to Apple as have a "cult like following." *See, e.g.,*
http://www.usatoday.com/tech/wireless/2007-05-21-at&t-iphone_N.htm ("Given Apple's cultlike
following..."). Even novels have been written on this topic such as Apple Confidential, 2.0 by Linz Mayer.
*See* review of Apple Confidential 2.0 at
http://netsecurity.about.com/od/readbookreviews/fr/aabr102504.htm ("Apple fans bring new meaning to
the word "fanatic" at times. The following that Apple commands borders on (or exceeds in some people's
minds) a cult.")

saturate the community to prevent prospective jurors from impartially adjudicating the dispute. *United States v. Lehder-Rivas*, 955 F.2d 1510, 1524 (11th Cir. 1992). Publicity which is sensational or prejudicial rather than factual bears more weight in this analysis. *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1480 (N.D. Ga. 1992). This is exactly what we have here. Just the announcement of this lawsuit inflamed Apple fans on numerous internet forums. Bloggers blindly defended Apple, criticizing RSS's patent, the patent system, patent examiners, and attorneys.[18] Considering the inflammatory tone of the communications and the cursory evaluations given the complex and technical facts of the suit, these blogs can easily be classified as sensational and prejudicial, and show how biased Apple fans can be.

The court must also consider the potential of actual bias to the potential juror pool because of the potential jurors having a pecuniary or economic interest in the suit. *Withrow v. Larkin*, 421 U.S.35, 47 (1975). The Northern District of California, San Jose Division, is a scant eleven miles from Apple's headquarters. It is presumed that a majority of Apple's 21,000 employees work and/or reside in the Northern District of California. Moreover, Apple has been headquartered in Cupertino for over 20 years. Between employees of Apple, their family and friends, and support industries dependant on the company's presence in Cupertino, there is a large number of potential jurors in the Northern District of California with a pecuniary or economic interest in the suit.

---

[18] Exhibit J, www.macnn.com/articles/08/02/07/itunes.patent.suit/ ("This is gunna flop so bad..."),; www.macuser.com/legal/appled_hit_with_patent_suit_ov.php ("I hate greedy, manipulative people"; http://www.macsimumnews.com/index.php/archive/company_files_patent_complaint_against_apple_for_it unes_store_allowance/ ("this company has gone crazy with suing [sic] everyone for everything [sic]"); forums.appleinsider.com/showthread.php?s=&threadid=84112 ("that took a work of genius to 'invent'"), www.techdirt.com/articles/20080212/021104237.shtml ("make people think twice before they file a ridiculous claim"). Cutting against the above Apple fan arguments is that Apple itself is attempting to get a patent on this very same subject matter.

RSS feels that Apple's admitted "strong connection" to California (*See* Docket No. 16 at 17), the fanatical nature of its user base, and the strong evidence of prejudicial and highly-charged publicity specifically associated with the suit at hand demonstrate there could be a presumed prejudice against RSS in the Northern District of California that is not present in this district. Thus, this action should remain here.

**D.      In the Alternative, if a Transfer is Necessary, This Case Should Be Transferred to Central District of California.**

If the Court deems that a transfer is necessary, RSS believes that the Central District of California is the next most appropriate forum for litigating this case. RSS is headquartered in the Central District of California and thus has a significant connection to the Central District of California. Considering the private and public factors discussed above, key witnesses would still be required to travel, as they would regardless of venue, and relevant discovery documents would still have to be transferred across state borders. Apple's products and software, including the accused, are also offered for sale and sold in Central District of California via the Apple website, iTunes, retail stores, and authorized resellers signifying a connection to Central District of California. Also, the jury pool would contain less Apple fans than Apple's requested forum. Thus, if transfer is necessary, RSS requests the Central District of California as the transferee venue.

## CONCLUSION

For the foregoing reasons, RSS respectfully requests that Apple's Motion to Transfer Venue to the Northern District of California, San Jose Division be denied in its entirety. In the alternative, if the Court deems transfer is necessary, RSS requests transfer to the Central District of California.

Respectfully submitted,
RESTRICTED SPENDING SOLUTIONS, LLC

By its attorneys
SIMMONSCOOPER LLC

Dated: April 24, 2008

s/Paul A. Lesko
Paul A. Lesko (S.D.Ill. #6288806)
Stephen C. Smith (S.D.Ill. #6279828)
Jo Anna Pollock (S.D.Ill. #6273491)
707 Berkshire Blvd.
P.O. Box 521
East Alton, Illinois  62024
(618) 259-2222
(618) 259-2251 *facsimile*
plesko@simmonscooper.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system to those attorneys of record with an email address indicated on this 24th day of April, 2008:

Henry C. Bunsow
BunsowH@howrey.com
James F. Valentine
ValentineJ@howrey.com
Jason T. Anderson
AndersonJ@howrey.com
Ryan J. Moran
MoranR@howrey.com
Christina M. Finn
FinnC@howrey.com
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, California 94303
Tel: 650-798-3500
Fax: 650-798-3600

   and

Alan H. Norman
anorman@thompsoncoburn.com
Michael L. Nepple
mnepple@thompsoncoburn.com
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101
Tel: 314-552-6000
Fax: 314-552-7000

Joseph P. Conran
jconran@husch.com
HUSCH & EPPENBERGER
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Tel: 314-480-1500
Fax: 314-480-1505